PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LOCAL 894 LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, *et al*., | ) ) ) ) ) |
| Plaintiffs, | ) CASE NO.  5:19CV2221 ) |
| v. | ) JUDGE BENITA Y. PEARSON ) |
| KENNY/OBAYASHI V, *et al*., | ) ) **MEMORANDUM OF OPINION AND** |
| Defendants. | ) **ORDER** ) [Resolving ECF No. 49] |

Pending before the Court is Defendants Kenny/Obayashi V, Kenny Construction

Company, and Obayashi Corporation's (collectively "Defendants") Motion for Summary

Judgment.  ECF No. 49.  Plaintiff Alpha Souare filed an opposition.[1]  ECF No. 50.  Defendants

replied.[2]  ECF No. 53.  The Court has reviewed the parties' filings, exhibits, and the applicable

law.  For the reasons stated below, Defendants' Motion for Summary Judgment (ECF No. 49) is

granted.

## I.  Background

This case arises out of the single night of employment.  Plaintiff, who migrated to the

United States from Guinea, worked for Defendants as a laborer assisting with the completion of

---

[1]  Plaintiff Alpha Souare is the only remaining Plaintiff in this matter.  All other
Plaintiffs' claims were resolved and dismissed.  ECF No. 45.

[2]  Defendants' reply (ECF No. 53) is an amended version of their original reply
(ECF No. 52).  There are no substantive changes in the amended version.

(5:19CV2221)

the Ohio Canal Interceptor Tunnel Project (the "Project").  Plaintiff was employed by

Defendants from the evening of December 4, 2017 until the conclusion of his shift on December

5, 2017.  ECF No. 47 at PageID #: 255 – 256.  Plaintiff first heard about the project through

Local Union No. 984 (the "Union").  ECF No. 47 at PageID #: 256.  After speaking with David

Schatska ("Mr. Schatska"), manager of the Project, Plaintiff was hired through the Union.  ECF

No. 47 at PageID #: 258.

Plaintiff reported for work on the Project on December 4, 2017 and completed the safety

and orientation training.  ECF No. 47 at PageID #: 260.  As a part of the orientation, Plaintiff

was notified of Defendants' equal employment opportunity policy, and how to file a complaint

for violations of that policy.  ECF No. 47 at PageID #: 260 – 261.  Once the training was

completed, Plaintiff proceeded to begin working, but he was unsure of what his job

responsibilities were or how to perform them.  During his shift, Plaintiff alleges he was subjected

to a series of offensive remarks, including:

1. "[T]he black in the back[.]"  ECF No. 47 at PageID #: 266.

2. "This is not an African job."  ECF No. 50-1 at PageID #: 459.

3. "We don't care about your degree here."  ECF No. 50-1 at PageID #: 459.

4. "Stupid work should be performed by Blacks."  ECF No. 50-1 at PageID #: 459.

Plaintiff states many of the remarks were aimed at Plaintiff's accent, as many of the other

laborers on the Project had a difficult time understanding what Plaintiff was saying.  ECF No. 47

at PageID #: 259.  Kevin Truitt ("Mr. Truitt") who was also a laborer on the Project at the same

time as Plaintiff, testified to the offensive remarks he heard while Plaintiff was working on the

Project, including:

1. "[A]in't no African going to be on this ship[.]"  ECF No. 51 at PageID #: 475.

2

(5:19CV2221)

    2. "I can't understand a word this motherfucker's saying[.]" ECF No. 51 at PageID #: 477.

    3. "I don't give a fuck about blacks.  It's my way or the highway[.]" ECF No. 51 at PageID #: 477.

Plaintiff was handed a paycheck and told not to return to work on the Project due to his inadequate skillset for tunnel or shaft work.  ECF No. 47 at PageID #: 263. Defendants told Plaintiff that, because nobody could understand him, it was a safety concern for him to work there.  ECF No. 47 at PageID #: 269.  He notified the Union he was not told to come back.  ECF No. 47 at PageID #: 264.  Plaintiff did not engage with the equal employment opportunity reporting protocol he was notified of during training.  Id.

Defendants are moving for summary judgment on Plaintiff's two claims: (1) Racially Hostile Work Environment, and (2) National Origin Discrimination.[3]

## II.  Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 462 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies on the absence of an essential element in the pleadings, depositions, answers to interrogatories, and

---

[3] Plaintiff's claims are based on violations of Ohio Revised Code § 4112 (O.R.C. § 4112, et seq.).  The evidentiary standards for discrimination claims under Ohio Revised Code § 4112 (O.R.C. § 4112, et seq.) and its federal analogue, Title VII (42 U.S.C. § 2000e, et seq.), are equally applicable.  *See Wilson v. Ford Motor Co.*, 513 F. App'x 585, 588 (6th Cir. 2013); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020 n. 2 (6th Cir. 2000).

(5:19CV2221)

admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To survive summary

judgment, the non-moving party "must 'do more than simply show that there is some

metaphysical doubt as to the material facts.'"  *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th

Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will

be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In analyzing a motion for summary judgment,

the Court "must view the evidence in the light most favorable to the nonmoving party."  *Lossia*

*v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d

541, 547 (6th Cir. 2017).

### III.  Discussion

#### A.  Racially Hostile Work Environment

Defendants aver that Plaintiff's hostile work environment claim must fail because (1)

"the frequency of the alleged discriminatory conduct as claimed by [Plaintiff] was not severe and

pervasive and did not cause unreasonable interference with his work performance" and (2)

"Plaintiff did not inform anyone of the alleged discriminatory conduct[.]"  ECF No. 49 at PageID

#: 295.  Plaintiff counters by arguing that the treatment he was subjected to "because of his race,

national origin and thick accent unreasonably interfered with his work performance, disallowing

him from performing" his job.  ECF No. 50 at PageID #: 453.

To establish liability for a hostile work environment based on race, "a plaintiff must show

that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) that

harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter

(5:19CV2221)

the conditions of his employment; and (5) the employer knew or should have known about the harassment and failed to take appropriate remedial action." *Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021) (citing *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020)).

Plaintiff's claim must fail because of the fourth element, the severity and pervasiveness of the harassment.  "Factors to consider include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Williams*, 643 F.3d at 512 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  "Occasional offensive utterances do not rise to the level required to create a hostile work environment." *Williams*, 643 F.3d at 512 (quoting *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)).

Because Plaintiff alleges, and only provides evidence for, harassment occurring on his single evening of employment, it cannot be found that the harassment was severe or pervasive enough to sustain a hostile work environment claim.  Longer periods of time in which a plaintiff was subject to harassment like Plaintiff has frequently been found insufficient for a hostile work environment claim. *See, e.g. Williams*, 643 F.3d at 513 (finding that the racist statement directed at Plaintiff, most of which "occurred over a two-day period" did not meet the requisite level of severity or pervasiveness for a hostile work environment claim); *Reed v. Procter & Gamble Mfg. Co.*, 556 Fed. Appx. 421, 432 (6th Cir. 2014) (holding that plaintiff could not establish conduct severe or pervasive enough for a hostile work environment even though plaintiff, over several

5

(5:19CV2221)

years or employment, (1) "received a 'threaten[ing]' email and a 'hostile' phone call from [his supervisor];" (2) believed his supervisor "created a noose from a telephone cord when [plaintiff] was nearby but unable to see [his supervisor]'s gesture;" (3) "heard colleagues use racial slurs in the workplace;" (4) "was excluded from lunches with colleagues and treated in a cold manner by his managers after expressing his concerns about the promotion process; and (5) a colleague at one point splashed [plaintiff]'s 'head and face ... with an unknown solution.'"); *Burnett v. Tyco Corp.*, 203 F.3d 980, 983 (6th Cir. 2000) (holding that, although derogatory comments aimed at plaintiff "took place fairly consistently over a period of four months," the "defendant was entitled to judgment as a matter of law" because "the comments were merely offensive and were therefore insufficient to support the jury's verdict"); *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (holding that even though plaintiff "specifically identifies several racially offensive statements made over a period of two years: (1) [A Union leader] listing union reps he would fire; (2) [A Union leader] saying that they needed 'another black on staff'; (3) [A Union leader]'s big-black bodyguard comment; and (4) [A Union leader]'s "too many blacks" in the union comment[,]" the comments "are not actionable as a hostile work environment" because they were "not pervasive or severe enough to alter the terms and conditions of [plaintiff]'s employment").

The instant case is in stark contrast to conduct which has been found to be sufficiently severe or pervasive.  *See Bradley v. Arwood*, 705 F. App'x 411, 422 (6th Cir. 2017) (holding because plaintiff showed that the race-based harassment "she suffered included daily interactions, emails, and other communications, barriers to her use of leave, demands that she work while on medical leave, and unfounded negative reviews and counselling memos" amounted to "an environment of almost daily harassment and belittling subordination that

6

(5:19CV2221)

persisted and even intensified over a period of years," she showed that the harassment was sufficiently severe and pervasive).  While the Sixth Circuit has recognized that a single incident may be sufficient to create a hostile work environment, the incident must be extreme.  *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012).  The harassment lodged against Plaintiff offends basic expectations of human decency.  While offensive and troublesome, the single evening of belittling and insulting comments does not meet the severity or pervasiveness required for a successful hostile work environment claim.  Accordingly, summary judgment is granted in favor of Defendants on Plaintiff's hostile work environment claim.

### B.  National Origin Discrimination

Defendants argue Plaintiff's national origin discrimination claim must fail because (1) there were 17 individuals, of varying protected classes, who were laid off for the same reason as Plaintiff, and (2) Plaintiff was discharged for legitimate business, particularly work performance and safety reasons.  ECF No. 49 at PageID #: 298.  Plaintiff retorts, "[b]ecause the comments about [Plaintiff's] race and national origin were made so close in time to the layoff/termination, there is an issue of fact as to whether [Plaintiff] was actually terminated for 'inadequate skill set' or if he was terminated because of his race, national origin and because nobody on the project could understand his thick accent."  ECF No. 50 at PageID #: 450.

Absent direct evidence of discrimination based on national origin, the Court must employ the burden shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "To establish a prima facie case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-

(5:19CV2221)

protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).  "Once the plaintiff establishes this prima facie case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *White*, 533 F.3d at 391 (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  "[I]f the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *Id.* (citing *Burdine*, 450 U.S. at 253).

        In the present case, Defendants chiefly dispute the fourth element, regarding the treatment of Plaintiff in comparison to other similarly-situated, non-protected, employees.  For support, Defendants rely on their List of Employees (ECF No. 49-7) which demonstrates that there were seven Caucasian employees between January 2017 and July 2018 who were laid off for inadequate skill set, the same reason for Plaintiff's layoff.  Six of the seven employees were laid off in under four days, including one Caucasian employee who was laid off on the same day he began work, December 4, 2017, which was also Plaintiff's first day.  *Adebisi v. Univ. of Tennessee*, 341 F. App'x 111, 112 (6th Cir. 2009) (holding that plaintiff failed to make a prima facie showing of discrimination because there was no evidence of individuals outside his protected class being treated more favorably); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (plaintiff failed to make a prima facie showing of national origin discrimination "because he could not identify a similarly situated employee outside those protected classes who had been treated more favorably than he had").  Importantly, Plaintiff does not offer that he was replaced by a person outside of his protected class.  Accordingly, Plaintiff is unable to establish a prima facie case of discrimination based on national origin.

(5:19CV2221)

Had Plaintiff established a prima facie case for national origin discrimination, Defendants have proffered a legitimate, non-discriminatory reason for Plaintiff's lay off---work performance. See *Smith v. Food Bank of E. Michigan*, No. 17-1578, 2017 WL 9470711, at *3 (6th Cir. Dec. 8, 2017) (defendant "set forth a legitimate, non-discriminatory reason for [Plaintiff]'s termination—her performance issues"); *Johnson v. Fifth Third Bank*, 685 F. App'x 379, 385 (6th Cir. 2017) (citing plaintiff's poor sales performance as legitimate, non-discriminatory reason for termination).  Safety concerns constitute an additional valid, non-discriminatory reason to lay off an employee.  *See Mitchell v. United States Postal Serv.*, 738 F. App'x 838, 845 (6th Cir. 2018) (recognizing workplace safety concerns as a legitimate non-discriminatory reason to place employee on leave); *Turner v. Marathon Petroleum Co., LP*, 804 F. App'x 375, 378 (6th Cir. 2020) (employer's concern about workplace safety was a legitimate, non-discriminatory reason for firing plaintiff).

Finally, Plaintiff has not shown Defendants' reasons for his lay off to have been pretextual.  "A plaintiff may show pretext by demonstrating: '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse employment action], or (3) that they were insufficient to motivate [the adverse employment action].'" *Davis v. Cintas Corp.*, 717 F.3d 476, 491–92 (6th Cir. 2013) (quoting *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)).  Plaintiff points to nothing other than deposition testimony and written discovery responses to show that Plaintiff was subjected to a series of racially insensitive and demeaning comments.  That will not suffice to demonstrate pretext, given that Defendants fired other individuals not in Plaintiff's protected class, for the same reasons Plaintiff was laid off---work performance and safety concerns.  Both reasons are recognized as nondiscriminatory.  *Khamati v. Sec'y of Dep't of the Treasury*, 557 F. App'x 434,

(5:19CV2221)

441 (6th Cir. 2014) (plaintiff failed to demonstrate pretext because plaintiff's "main argument is

that disputes of material fact exist" and, further, the "nondiscriminatory reasons proffered by

[plaintiff's supervisors] … were based on fact").

Accordingly, summary judgment is granted in favor of Defendants on Plaintiff'sNational

Origin Discrimination claim.

### IV.  Conclusion

For the reasons stated above, Defendants Kenny/Obayashi V, Kenny Construction

Company, and Obayashi Corporation's Motion for Summary Judgment (ECF No. 49) is granted.


IT IS SO ORDERED.



January 31, 2022                                              /s/ Benita Y. Pearson
Date                                                                Benita Y. Pearson
                                                                    United States District Judge